UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION



WENDY A. LATTIMORE-WIEGAND,

    Plaintiff,

vs.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

    Defendant.

_____/

OCT 1 0 2013

CLERK'S OFFICE
U.S. DISTRICT COURT
EASTERN MICHIGAN

Case No. 13-12194

HON. AVERN COHN

## MEMORANDUM AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS (Doc. 9) AND DISMISSING CASE

### I. INTRODUCTION

This is an insurance fraud case. Plaintiff Wendy Lattimore-Wiegand (Plaintiff) is suing Defendant State Farm Mutual Automobile Insurance Company (Defendant) over a provision in her automobile insurance policy providing underinsured motorist (UIM) coverage. Plaintiff says that, although she pays a premium to Defendant for UIM coverage, her insurance policy's insuring agreement and limiting clauses render the UIM coverage illusory, and that the same is true as to all of Defendant's minimum liability coverage policies. In addition to raising her own claim, Plaintiff seeks to certify a class for a class action lawsuit.

Plaintiff's complaint is in seven counts, phrased by her as follows:

Count I       Fraud and Misrepresentation

Count II     Violations of RICO

Count III    Constructive or Silent Fraud

Count IV      Unjust Enrichment

Count V       Breach of Contract

Count VI      Class Action Allegations

Count VII     Violation of Public Policy

Now before the Court is Defendant's motion to dismiss (Doc. 9). The Court held a hearing on October 2, 2013; the motion is ready for decision. For the reasons that follow, the motion will be granted.

## II. BACKGROUND

Plaintiff purchased an automobile insurance policy from the Defendant. (Doc. 1-1, Ins. Policy). Under the policy, the bodily injury limits per occurrence for "Each Person" is $20,000 and "Each Accident" is $40,000. This is the minimum required amount of liability insurance coverage under Michigan law. See Mich. Comp. Laws § 500.3009.

For a premium of $1.87 paid every six-month policy term, Plaintiff opted for UIM coverage. UIM coverage applies when Plaintiff is involved in an accident and the driver at fault does not have enough insurance coverage, in the aggregate, to adequately compensate her for her injuries. In these instances, UIM coverage allows her to receive compensation from Defendant up to the policy's $20,000 limits to cover the at-fault driver's shortfall.[1] UIM coverage is not mandated by Michigan No-Fault Automobile law but instead is an optional coverage. Dawson v. Farm Bureau Mut. Ins. Co. of Mich., 293 Mich. App. 563, 568 (2011).

---

[1] If Plaintiff had other passengers in her vehicle who were also injured, they would be considered "insured" under her policy, and the policy would cover the shortfall up to the $40,000 "Each Accident" limit.

2

Here, the policy defines UIM coverage:

> **Underinsured Motor Vehicle** means a land motor vehicle or motorcycle:
> 1. The ownership, maintenance, and use of which is either:
>> a. insured or bonded for bodily injury liability at the time of the accident; or
>> b. self-insured under any motor vehicle financial responsibility law, any motor carrier law, or any similar law, and
> 2. for which the total limits of insurance, bonds, and self-insurance for bodily injury liability from all sources:
>> a. are less than the Underinsured Motor Vehicle Coverage limits of this policy; or
>> b. have been reduced by payments to **persons** other than **you** and **resident relatives** to less than the Underinsured Motor Vehicle limits of this policy.

(Doc. 1-1 at 20).

In addition, the UIM coverage insuring agreement states:

> **We** will pay only if the full amount of all available limits of all bodily injury liability bonds, policies, and self-insurance plans that apply to the **insured's bodily injury** have been used up by payment of judgments or settlements, or have been offered to the **insured** in writing.

(*Id.*).

Finally, the policy places limits on UIM coverage:

> **Limits**
> 1. The Underinsured Motor Vehicle Coverage limits are shown on the Declarations Page under "Underinsured Motor Vehicle Coverage – Bodily Injury Limits – Each Person, Each Accident"
>> a. The most **we** will pay for all damages resulting from **bodily injury** to any one **insured** injured in any one accident, including all damages sustained by other **insureds** as a result of that **bodily injury**, is the lesser of:
>>> (1) the limit shown under "Each Person" reduced by the sum of all payments for damages resulting from that **bodily injury** made by or on behalf of any **person** or organization who is or may be

3

> held legally liable for that **bodily injury**; or
> (2) the amount of all damages resulting from that
> **bodily injury** reduced by the sum of all
> payments for damages resulting from that **bodily
> injury** made by or on behalf of any **person** or
> organization who is or may be held legally liable
> for that **bodily injury**.
>
> b. Subject to a. above, the most **we** will pay for all
> damages resulting from **bodily injury** to two or more
> **insureds** injured in the same accident is the limit shown
> under "Each Accident" reduced by the sum of all
> payments for **bodily injury** made to all **insureds** by or
> on behalf of any **person** or organization who is or may
> be held legally liable for the **bodily injury**.

(*Id.* at 21).

Under the policy, Plaintiff also has uninsured motor vehicle (UI) coverage. (Doc.

1-1 at 16–17). UI coverage applies if Plaintiff was involved in an accident with a driver who

did not maintain any insurance, or did maintain insurance but below the statutory minimum

under Michigan law. Plaintiff is not challenging the UI coverage as illusory.

### III. STANDARD OF REVIEW

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the sufficiency of a

complaint. To survive a Rule 12(b)(6) motion to dismiss, the complaint's "factual

allegations must be enough to raise a right to relief above the speculative level on the

assumption that all of the allegations in the complaint are true." *Bell Atlantic Corp. v.

Twombly*, 550 U.S. 544, 545 (2007). *See also Ass'n of Cleveland Fire Fighters v. City of

Cleveland, Ohio,* 502 F.3d 545, 548 (6th Cir. 2007). The Court is "not bound to accept as

true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009) (internal quotation marks and citation omitted). Moreover, "[o]nly a complaint

that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679. Thus, "a

4

court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* In sum, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Id.* at 678 (internal quotation marks and citation omitted).

## IV. DISCUSSION

The question presented is straightforward: Is UIM coverage in Defendant's minimum liability coverage insurance policies ($20,000 per person/$40,000 per accident) illusory? As long as there is "any manner in which the policy could be interpreted to provide coverage," the challenged policy provision is not illusory. *See Cincinnati Ins. Co. v. Hall*, No. 308002, 2013 WL 3107640, at *5 (Mich. Ct. App. June 20, 2013) (per curiam).[2] As Defendant explained at the hearing, and as will be explained further below, there are three situations in which UIM coverage is available in Plaintiff's policy. Consequently, the UIM coverage provision in Defendant's automobile insurance policies is not illusory. Plaintiff therefore fails to state a claim upon which relief can be granted.

---

[2] The parties agree that Michigan law applies to all counts except the RICO claim because the Court has diversity and/or supplemental jurisdiction. In diversity cases, this Court must apply the substantive law of Michigan as the forum state. *Berrington v. Wal-Mart Stores, Inc.*, 696 F.3d 604, 607–08 (6th Cir. 2012) (citations omitted). If "the Michigan Supreme Court has not addressed the issue presented," the Court must "anticipate how [it] would rule in the case." *Id.* (citing *Allstate Ins. Co. v. Thrifty Rent–A–Car Sys. Inc.*, 249 F.3d 450, 454 (6th Cir. 2001)).

In reaching this conclusion, the Court is cognizant that UIM coverage "is not mandated by statute," and therefore, "the scope, coverage, and limitations of underinsurance protection are governed by the insurance contract and the law pertaining to contracts." *Mate v. Wolverine Mut. Ins. Co.*, 233 Mich. App. 14, 19 (1998) (citing *Auto-Owners Ins. Co. v. Leefers*, 203 Mich. App. 5, 10–11 (1993)). Insurance contracts are interpreted "in accordance with Michigan's well-established principles of contract construction." *Henderson v. State Farm Fire and Cas. Co.*, 460 Mich. 348, 353 (1999) (citing *Arco Indus. Corp. v. Am. Motorists Ins. Co.*, 448 Mich. 395, 402 (1995)). This requires insurance contracts to be enforced according to their terms, and courts should not create an ambiguity when the policy is clear and precise. *Id.* at 354 (citations omitted). The insurance contract must "be read and interpreted as a whole." *Taylor v. Blue Cross/Blue Shield of Mich.*, 205 Mich. App. 644, 649 (1994) (citing *Fragner v. Am. Comm. Mut. Ins. Co.*, 199 Mich. App. 537, 540 (1993)). "Exclusions are to be read with the insuring agreement and independent of other exclusions." *Id.* (citation omitted).

Where an insurance policy is clear, i.e. "if it fairly admits of but one interpretation," its "construction is a question of law for the court." *Id.* (citation omitted). However, if a contract is ambiguous, i.e. "after reading the entire contract, its language reasonably can be understood in differing ways," it must "be construed against the insurer and in favor of the insured." *Id.* (citation omitted).

## A. Three Scenarios Providing for UIM Coverage

Plaintiff's entire complaint is based on her assertion that the UIM coverage in her policy is illusory. However, there are at least three scenarios in which UIM coverage can be triggered under the policy. Therefore, Plaintiff's complaint is without merit.

6

### 1. Scenario #1

The first scenario, depicted in attached Exhibit A, involves a two-car accident. Car #1 is the at-fault motor vehicle and has three occupants, none of which are Defendant's insured. The at-fault driver has minimum liability coverage of $20,000/$40,000. Car #2 has three occupants, including Plaintiff, who is driving. Plaintiff has $20,000/$40,000 coverage. Because Plaintiff is driving her vehicle, all of her occupants are defined as "insured" under her policy. All six people involved in the accident are injured and each sustains $10,000 in damages. The at-fault driver's insurance proceeds are used as follows: first, $30,000 is paid between the three occupants in Car #1; second, $10,000 is paid between the three occupants in Car #2.

### 2. Scenario #2

The second scenario, depicted in attached Exhibit B, also involves a two-car accident. Car #1 is the at-fault motor vehicle driven by the at-fault driver without any occupants. The at-fault driver has minimum liability coverage of $20,000/$40,000. Car #2 is owned and being driven by a third party, and Plaintiff is an occupant in that vehicle. Plaintiff has $20,000/$40,000 coverage. Including the driver, three other non-insured's are occupants in Car #2. All five people involved in the accident are injured and each sustains $10,000 in damages. The at-fault driver's insurance proceeds pays each of the occupants of Car #2, including Plaintiff, $10,000.

### 3. Scenario #3

The third scenario, depicted in attached Exhibit C, involves a three-car accident. Car #1 is the at-fault motor vehicle driven by the at-fault driver without any occupants. The at-fault driver has minimum liability coverage of $20,000/$40,000. Car #2 is the Plaintiff

7

driving her vehicle without any occupants. Plaintiff has $20,000/$40,000 coverage. Car #3 is owned and being driven by a third party with one occupant. All four people are injured in the accident and each sustains $10,000 in damages. The at-fault driver's insurance proceeds pay the occupants of Car #3 $15,000 per person and Plaintiff $10,000.

**B. Analysis**

In the above scenarios, the maximum of the at-fault driver's insurance proceeds in the aggregate are used. Plaintiff–the "insured"–has not received the total amount of benefits available under her policy with Defendant ($20,000). Therefore, section 2.b of the UIM coverage provision in the policy applies to cover the shortfall. Under section 2.b, payments by the at-fault driver "have been reduced by payments to *persons* other than *you* and *resident relatives* to less than the Underinsured Motor Vehicle limits of this policy." Thus, UIM coverage is triggered.

Plaintiff disagrees for three reasons. First, Plaintiff argues that preset "policy limits" can never be "reduced" and, therefore, UIM coverage is never available under the plain reading of the provision. Plaintiff relies on *Schwartz v. State Farm Mutual Automobile Insurance Company*, 174 F.3d 875 (7th Cir. 1999). This argument fails to persuade. *Schwartz* is helpful to Defendant's position.

In *Schwartz*, the Seventh Circuit considered the same issue presented in this case. Pamela Schwartz and her daughter were involved in a two-car accident with Everitt C. McMillin, who was determined to be at fault. McMillin carried an insurance policy from United Southern Assurance Company (Southern Assurance) for $25,000 per person and $50,000 per occurrence, which was the minimum required coverage under Indiana law. *Id.* at 877. McMillin's policy amount was paid to the Schwartzes, who, at the time, also had

8

a minimum coverage automobile insurance policy from State Farm. *Id.* After obtaining the

$50,000 from Southern Assurance, the Schwartzes made a claim to State Farm based on

the UIM provision in the policy. *Id.* State Farm rejected the Schwartzes claim on the

grounds that their recovery under the policy was offset by the amount they received from

Southern Assurance, the maximum amount under their policy with State Farm. *Id.*

Like the policy in this case, the Schwartzes policy provided UIM coverage where the

limits of liability for bodily injury liability "have been reduced by payments to **persons** other

than the **insured** to less than the limits **you** carry for underinsured motor vehicle coverage

under this policy." *Id.* at 880 (emphasis in original). The Seventh Circuit explained:

> Section 2b of the under-insured provision contemplates
> coverage in a situation where a driver found liable is unable to
> pay his policy limit to the insured because that amount must be
> divided among multiple victims. For example, if McMillin had
> been liable to both the Schwartzes and another driver, and had
> to pay half of his policy to each, the Schwartzes' under-insured
> provision would pay the rest (up to the limits of their policy).

*Id.*

In rejecting the Schwartzes argument that the at-fault driver's payments to other

non-insureds would bring the at-fault driver within the meaning of "uninsured" and,

therefore, UIM coverage would not apply, the Seventh Circuit stated: "We cannot

understand how payment to others could 'reduce' pre-set insurance liability limits." *Id.* In

other words, the Seventh Circuit meant that the *reductions* as a result of the at-fault driver's

*payment to other non-insured's* could not "reduce" the at-fault driver's policy limit and

render the at-fault driver "uninsured" under the Schwartzes policy.

Plaintiff's reliance on *Schwartz* for the proposition that section 2.b will never apply

because the total UIM limits cannot be "reduced" is misplaced. Section 2.b does not

9

reduce Plaintiff's policy limit. It says that UIM coverage is triggered when *payments to the insured* have been reduced because payments were made to others involved in the accident, and the at-fault driver is unable to pay the insured the full amount of her policy. Thus, Plaintiff's argument is without merit.

Second, Plaintiff says that the insuring agreement, read literally, would preclude UIM coverage under the scenarios above. The insuring agreement, as explained above, states that Defendant will provide UIM coverage only if "the full amount of all available limits of all bodily injury liability bonds, policies, and self-insurance plans that apply to the *insured's bodily injury* have been used up by payment of judgments or settlements, or have been offered to the *insured* in writing." Plaintiff argues that, because the at-fault driver in scenarios above did not offer the entire amount of his policy to Plaintiff, the insuring agreement precludes coverage. The Court disagrees.

Plaintiff's strained reading of the insuring agreement fails to apply the provision as it is written. The plain reading of the insuring agreement provides UIM coverage when the full amount of the at-fault driver's policy has "been used up by payment of judgments or settlements" *or* has been "offered to the insured in writing." The word "or" is a conjunction "used to connect words, phrases, or clauses representing alternatives."[3] In the scenarios above, the full amount of the at-fault driver's policy is "used up by payment of judgments or settlements" and Plaintiff is left with a shortfall. Thus, the first alternative in the insuring agreement is met. Plaintiff's argument that the at-fault driver would also be required to meet the second alternative—by offering the full amount of his policy *only* to the

---

[3] http://dictionary.reference.com/browse/or?s=t

10

insured–changes the conjunction "or" to "and." This is not what the parties contemplated and is not how the policy is written.

Finally, Plaintiff argues that the limiting provision of the policy precludes coverage under the scenarios above. Plaintiff says that the policy's limits reduce any UIM coverage by "the sum of all payments for damages resulting from that ***bodily injury*** made by or on behalf of any ***person*** or organization who is or may be held legally liable for that ***bodily injury***." This, according to Plaintiff, means that any payment made by the at-fault driver to third parties also injured in the accident reduces her UIM coverage. Plaintiff's interpretation of the limits provision renders the UIM coverage provision nugatory. *Wells Fargo Bank, NA v. Cherryland Mall Ltd. P'ship*, 295 Mich. App. 99, 111 (2011) ("Courts must . . . give effect to every word, phrase, and clause in a contract and avoid an interpretation that would render any part of the contract surplusage or nugatory.") (citation and internal quotation marks omitted). As Defendant explains:

> Plaintiff argues that the limits provision reduces State Farm's obligation to pay UIM benefits by the amount of "all payments made" by the at-fault driver's insurance. Yet, this tortured reading of the policy contradicts the policy language itself, which restricts any reduction in State Farm's obligation to those payments made for damages resulting "from ***that bodily injury***"–that is, the "bodily injury of any one insured" as identified in part a. Payments by the at-fault driver's insurer to victims ***other than the insured*** thus would have no effect on State Farm's obligation to pay UIM benefits.

(Doc. 16 at 3, Def's. Reply Br.) (emphasis in original) (internal citations to record omitted).

At best, Plaintiff has established that when the UIM provision is read together with the policy's limitations and the insuring agreement of the policy, it is ambiguous. However, ambiguities are construed against the insurer and in favor of the insured. *Taylor v. Blue*

11

*Cross/Blue Shield of Mich.*, 205 Mich. App. 644, 649 (1994). Therefore, to the extent that the limits provision is ambiguous, it must be interpreted in favor of UIM coverage.

The Court's decision is supported by a similar Michigan case. In *Ile v. Foremost Ins. Co.*, 293 Mich. App. 309, 311 (2011), Foremost Insurance Company (Foremost) issued a motorcycle insurance policy to Darryl Ile (Ile) that included bundled UI and UIM coverage "in an amount equal to the minimum liability coverage limits permitted under Michigan law of $20,000/$40,000." Ile paid a $26 premium for the coverage. *Id.* Through the policy's limitations, "Foremost sought to . . . limit the extent of its liability . . . by reiterating throughout the policy that it 'will not make a duplicate payment . . . for any element of loss for which payment has been made by or on behalf of persons or organizations who may be legally responsible.'" *Id.* at 312.

Ile was killed when "he struck a parked vehicle while driving the motorcycle insured under the policy described above." *Id.* at 313. His estate recovered the policy limit of $20,000 from Titan Insurance Company, the insurer of the parked vehicle. *Id.* Ile's estate also sought to recover an additional $20,000 from Foremost under the policy. *Id.* However, "Foremost denied the claim and declined any additional payment on the basis of Ile's already having received the maximum amount payable under the decedent's policy from the insurer of the parked vehicle." *Id.* The estate sued Foremost alleging breach of contract and misrepresentation.

Finding that the insurance policy was clear and unambiguous, the trial court turned to whether the UIM coverage was illusory. The trial court concluded that "'courts have found underinsured motorist coverage to be illusory in scenarios where the injured person has the statutory minimum amount of motor vehicle liability insurance coverage, and those

12

two amounts are equal.'" *Id.* Specifically, the trial court explained:

> [I]f an insured selects limits of liability for coverage under the Policy which are the same as the minimum permissible liability limits under Michigan law, i.e., $20,000/$40,000, no other vehicle registered in Michigan could ever qualify as an underinsured motor vehicle as defined in the Policy. Moreover, the Policy would never provide underinsured motorists coverage when vehicles from other states having lesser mandatory minimum coverages are involved insofar as the Policy expressly excludes from the definition of underinsured motor vehicle any vehicle covered by insurance liability limits that are less than the minimum limit for bodily injury liability specified by Michigan. Thus, under no circumstances would Foremost have to pay underinsured motorists coverage under the Policy.

*Id.* at 314.

The court of appeals affirmed. In so doing, the court of appeals relied on decisions from "courts in Wisconsin [which] have concluded that underinsured motorist policies that are equal to a state's mandatory statutory minimum coverage are illusory." *Id.* at 317. Thus, like the trial court, the court of appeals determined that UIM coverage in a minimum coverage policy such as Ile's was illusory.

In a short order, the Supreme Court reversed the court of appeals' decision. The Supreme Court stated,

> [W]hen read as a whole, the clear language of the policy provides for combined uninsured and underinsured motorist coverage that, as promised, would have operated to supplement any recovery by Ilse to ensure that he received a total recovery of up to $20,000/$40,000 (the policy limit) had the other vehicle involved in the crash been either uninsured or insured in an amount less than $20,000/$40,000. That such coverage would, under the terms of the policy, always be labeled "uninsured," as opposed to "underinsured," does not make the policy illusory.

*Ile v. Foremost Ins. Co.*, 493 Mich. 915 (2012).

13

Like *Ile*, a situation exists–at least three situations exist–which will allow for UIM coverage.  The policy, therefore, is not illusory.[4]

### V. CONCLUSION

Having concluded that the UIM provision in Plaintiff's policy is not illusory, the entirety of the complaint fails to state a claim upon which relief can be granted.  Therefore, Defendant's motion to dismiss is GRANTED.  This case is DISMISSED.

SO ORDERED.

Dated:  10/10/2013

_____
AVERN COHN
UNITED STATES DISTRICT JUDGE

_____

[4] Plaintiff's reliance on *Hoglund v. Secura Ins.*, 176 Wis. 2d 265 (Wis. App. 1993) for the contrary is misplaced.  The Michigan Court of Appeals in *Ile* relied on a line of Wisconsin cases to hold that UIM coverage in a minimum coverage policy is illusory. However, the Michigan Supreme Court reversed the court of appeals and implicitly rejected its reliance on the Wisconsin cases.  Thus, the Court is not persuaded that the Supreme Court will follow *Hoglund*'s rationale.

14

EXHIBIT A

# UIM COVERAGE
## *Scenario #1*



 = At-Fault Motor Vehicle

 = Other Motor Vehicle

 = State Farm Insured

 = <u>Not</u> State Farm Insured

EXHIBIT B

# UIM COVERAGE
## *Scenario #2*



 = At-Fault Motor Vehicle

 = Other Motor Vehicle

 = State Farm Insured

 = <u>Not</u> State Farm Insured

EXHIBIT C

# UIM COVERAGE
## *Scenario #3*



 = At-Fault Motor Vehicle

 = Other Motor Vehicle

 = State Farm Insured

 = <u>Not</u> State Farm Insured